UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANATA J. KLIEMCHEN,

        Plaintiff,

v.                                        Case No. 4:05-CV-73
                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on September 26, 1950, completed two years of college and had additional training as a massage therapist (AR 58, 73).[1] Plaintiff alleges that she became disabled on January 1, 2001 (AR 58). She had previous employment as a laboratory technician and as a massage therapist (AR 76). Plaintiff identified her disabling conditions as clinical depression, severe scoliosis, joint pain, discoid lupus, headaches, anxiety, inability to sleep well (wakes up every two hours) and a hernia (AR 67). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 26, 2004 (AR 17-23C). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff was not currently engaging in substantial gainful activity (AR 23B).

Second, the ALJ found that she suffered from the severe impairments of arthralgias, myalgias, depression and alcoholism (AR 23B).

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23B).  The ALJ made the following findings:

> The claimant's alcoholism meets the criteria for medical listings 12.04 and 12.09 . . . However, *independent* of ongoing alcoholism, the claimant does not meet or equal a listing.  Her depression under these circumstances would mildly restrict activities of daily living and social functioning, and moderately restrict concentration, persistence or pace.  In addition, it has never resulted in an episode of decompensation of extended duration, and none of the "C" criteria under the listings are present.

(AR 23B) (emphasis in original).

The ALJ decided at the fourth step that plaintiff  "has the following residual functional capacity, independent of ongoing alcohol abuse":

> she can lift/carry 10 pounds frequently and 20 pounds occasionally, and can sit, stand and/or walk 6 hours each during an 8-hour day.  She cannot repetitively bend, crawl, kneel or climb, and she is limited to jobs that require only a low degree of concentration.  Finally, the claimant cannot come in direct contact with the public.

(AR 23B).  The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 23B).  The ALJ also found that plaintiff's allegations regarding her limitations were not totally credible (AR 23B).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 23B). The ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform independent of her ongoing alcohol abuse (AR 23C).  Jobs located in the "region," identified as "Chicago proper and the six-color [sic] county

4

area of Northwest Indiana include: hand packer (6,500 jobs); machine tender (500 jobs); and maintenance worker (5,000 jobs) (AR 23C, 309).

The ALJ specifically found that "[a]lcoholism is a contributing factor material to this decision" (AR 23C).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23C).

## III. ANALYSIS

The court must discuss three preliminary matters.  First, plaintiff's counsel filed a motion for summary judgment contrary to the court's explicit directive that "[m]otions for summary judgment are inappropriate in social security cases and shall not be filed."  *See* docket no. 17.  Accordingly, the court redesignated plaintiff's motion for summary judgment as her initial brief.

Second, plaintiff's counsel contends that this court must apply the law of the Seventh Circuit Court of Appeals because the ALJ held the administrative hearing in Gary, Indiana. Counsel provides no citation to support this contention. Plaintiff is a resident of Sawyer, Michigan. *See* docket no. 1.  Her complaint was properly filed in this district.  This court is bound by Sixth Circuit precedent with respect to the litigation of this federal question.  Accordingly, the court will apply the law of this Circuit.

Third, counsel failed to set forth a statement of errors as directed by the court. The court will view the six main arguments in her brief as the alleged errors on appeal.

### A. Plaintiff was denied her statutory right to counsel because the ALJ failed to adequately inform her of the advantages of attorney representation.

Plaintiff represented herself at the administrative hearing.  Now, she contends that her case should be remanded because the ALJ failed to inform her of the advantages of attorney

representation.

The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). "Part of the administrative law judge's duty in this regard is to ensure that the claimant is aware of his or her right to legal representation." *Johnson v. Commissioner of Social Sec.*, 97 Fed.Appx. 539, 542 (6th Cir. 2004). The ALJ fulfills this duty by determining that the claimant has voluntarily waived his right to an attorney. *See Duncan*, 801 F.2d at 855. An ALJ can make this determination by establishing: (1) that the claimant received the agency notice advising him of the right to be represented by an attorney at the administrative hearing; and (2) that the claimant agreed to proceed with the hearing without being represented by counsel. *Id.* Once an ALJ establishes that the claimant voluntarily waived the right to an attorney, the ALJ has no further duty to discuss the claimant's right to representation. *Id.* "[E]ven though we scrutinize with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal." *Id.* at 856.

Here, the ALJ established that plaintiff voluntarily waived her right to an attorney:

ALJ:   And the issues today were set forth in your Notice of Hearing. Now in that notice and other papers that we suppplied you, we advised you that you have a right to be represented by a lawyer, or some other person. Are you aware of that right?

Clmt:   Yes, I am. And I waive that right.

ALJ:   Well, I don't take the position that you have to be represented or you don't,

6

but I have to make sure that if you do waive that right, that you do waive it with knowledge or [sic] your rights.

Clmt:   I did, and I signed the paper.

ALJ:   All right.  So you have signed a waiver of right to representation form for us. But you indicated that you –

Clmt:   Yes, I didn't think it was necessary.

ALJ:   – wish to proceed to hearing, so I'll accept that and we'll take that and we'll put it in the file.

Clmt:   Yes, correct.

(AR 268-69).

Nothing in the record suggests that plaintiff did not understand the waiver.  Plaintiff is literate.  The record reflects that she had two years of college education, worked with a number of laboratory instruments, and had classes in a number of technical fields of study (clinical chemistry, urinalysis, hematology, bacteriology, microbacteriology, physiology and anatomy) (AR 281-82).  At the hearing, plaintiff described herself as "very knowledgeable" (AR 282).  The agency sent her a notice advising her of the right to representation and she signed a Waiver of Right to representation form (AR 44-49, 56).  Finally, as noted above, plaintiff agreed to proceed without an attorney at the hearing.  Under the facts of this case, the ALJ had no further duty to discuss plaintiff's right to representation.  *Duncan*,  801 F.2d at 855.

> **B.   The ALJ failed to properly evaluate plaintiff's mental impairments resulting in an erroneous MRFC finding and erroneous hypotheticals.**

Next, plaintiff contends that ALJ erred in his analysis of plaintiff's alcohol abuse and that she had mental impairments in addition to alcohol abuse.

7

### 1.    Alcohol abuse

Title 42 U.S.C. § 423(d)(2)(c) precludes an award of benefits for individuals whose alcoholism or drug addiction is material to a finding of disability.  The statute provides in pertinent part that   "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that an individual is disabled."  42 U.S.C. § 423(d)(2)(c).  *See Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004) (under § 423(d)(2)(c), drug addiction or alcoholism may not be a material factor to a disability finding). In accordance with this restriction, an ALJ should look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse.  *Id.*

Here, the ALJ discussed plaintiff's alcohol abuse at great length:

[A]s far as her mental impairments are concerned, I am reasonably convinced that the claimant's alcoholism exacerbates her depression to such extent that she satisfies the requirements for listings 12.04 [affective disorders] and 12.09 [substance addition disorders].

*       *       *

The claimant has not been particularly forthright in describing her alcoholism.  In fact, she told Dr. Mahawar in July 2002 that she drinks only two glasses of wine per week, and she denied a history of substance abuse during the psychological consultative evaluation with Dr. Durak in August 2002 (Exhibits 3F & 5F).  Also, she testified at the hearing that she hasn't drunk alcohol for over eight years.  However, it turns out that the claimant's treatment history as reflected in Exhibits 1F and 15F is replete with references to intermittent periods of sobriety and relapse since calendar year 2000.  Furthermore, at one point, in July 2001, she acknowledged drinking nearly *a quart of vodka per day* for the past month (Exhibit 1F, p. 21).  It is relatively safe to say that an individual with an underlying depressive disorder, and with that much alcohol in her system, would be markedly restricted in social functioning, as well as in concentration, persistence or pace.  As such, she would meet the criteria for the listings.

8

However, Public Law 104-121, the Contract with America Advancement Act, stipulates, that an individual cannot receive disability-based benefits under Title II of the Social Security Act if drug addiction or alcoholism is a contributing factor material to the determination of disability.  In other words, an individual must be disabled <u>independent</u> of drug addiction or alcoholism in order to receive benefits.

The claimant's depressive disorder and/or anxiety-related symptoms stem for [sic] alcohol abuse, and are *not* irreversible.  Indeed, the significant change in mood the claimant experienced after just a few days and weeks of sobriety (See, for example, Exhibit 1 F, pp. 2, 27 & 28; and Exhibit 15F, p. 10) is evidence of the transitory nature of these symptoms.  Moreover, even now, and with her episodic heavy drinking, she manages to cook, go to the store, drive short distances, do her laundry, maintain her condominium, and care for her personal needs.  In addition, she reads, watches television, knits "a little," had a boyfriend for the past several years and stays in touch with her daughter (Exhibit 5 F and testimony).  Finally, she related  very well at the hearing.  As such, I believe her symptoms would all but resolve after a period of sustained abstinence, and that activities of daily living and social functioning would be only mildly limited.   Although concentration, persistence or pace might be moderately limited by thoughts of her son and/or occasional urges to drink, there is no evidence of an episode of decompensation *of extended* duration in the record.  Finally, none of the "C" criteria of the listings are present. Thus, the claimant does not meet or equal a listing, independent of ongoing alcohol abuse.

\*       \*       \*

As the next step of the sequential evaluation, I must decide the claimant's residual functional capacity, independent of ongoing alcohol abuse.  The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR § 404.1545 and Social Security Ruling 96-8p).

\*       \*       \*

. . . [A]s noted above, many of the claimant's purported psychological symptoms, including episodes of crying and her alleged "fear" of touching people, should resolve with sobriety.

(AR 21-23) (emphasis in original).

The ALJ properly evaluated plaintiff's condition by considering the extent of her mental impairments independent of the alcohol abuse. *See* 42 U.S.C. 423(d)(2)(c); *Bartley*, 117 Fed. Appx. at 998. Accordingly, the ALJ did not commit error in his analysis of plaintiff's alcohol abuse.

### 2. Mental residual functional capacity

Next, plaintiff contends that the ALJ erred in not giving controlling weight to her treating physicians "who found that [p]laintiff suffers from severe mental impairments absent alcohol." Plaintiff's Brief at 13. Plaintiff relies on the opinions of Dr. Natalia Fudim (psychiatrist), Dr. Jose L. Ramirez (psychiatrist), Dr. Gary M. Durak (DDS consultative psychologist), Catherine A. Reid (therapist) and Gail Aither (therapist). *Id.* at 11.

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of

doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

As an initial matter, the ALJ could properly discount the opinions of Ms. Reid and Ms. Aither because neither of them is a treating physician or even an acceptable medical source under 20 C.F.R. § 404.1513.  While their opinions can be considered as evidence from a non-medical source, it is not entitled the weight given to the opinions of doctors.  *See* 20 C.F.R. § 404.1513(d)(1) (evidence from "other" non-medical sources includes information from therapists). *See also, Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1));  *Nierzwick v. Commissioner of Social Security*, No. 00-

1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

Dr. Durak, a DDS consulting psychologist, was an examining source, not a treating source.  Dr. Durak examined plaintiff on August 8, 2002 and diagnosed her as suffering from major depression (AR 199-202). Dr. Durak had no basis to address the substance abuse issue, because plaintiff gave him an incorrect medical history.  Despite her extensive history and repeated diagnoses of alcohol abuse, plaintiff denied a history of substance abuse (AR 199).  Dr. Durak's conclusion that plaintiff suffered from major depression was based upon an incomplete and inaccurate medical history (AR 199-202).

Plaintiff also relies on the opinions expressed by two treating physicians,  Drs Fudim and Ramirez.  Contrary to plaintiff's contention, Dr. Fudim indicated that her depression and alcoholism were linked.  In July 2001, the doctor noted that plaintiff had been recently hospitalized because of having suicidal thoughts, and that during the hospitalization "she had admitted that she had been drinking again" (AR 121).  Plaintiff saw Dr. Fudim in January, March and June 2001 for follow up related to a recurrent depressive disorder and alcohol abuse (AR 122-24).

In July 2001, Dr. Ramirez noted that plaintiff was admitted to the Southlake Center for Mental Health on July 9, 2001 after complaining of suicidal ideation  (AR 127).  At that time, plaintiff reported that she had been depressed since her son's suicide and admitted to abusing alcohol (four to five mixed drinks with vodka daily) (AR 130).  Plaintiff reported to Dr. Ramirez that she had been drinking since the first of the year, and more heavily over the past three or four weeks (approximately a quart of vodka per day) (AR 140).  The doctor noted that plaintiff had a fairly long history of depression and overlapping substance abuse issues (AR 142).  The doctor believed that

some type of relationship existed between plaintiff's alcohol abuse and the extent of her depression,

noting that "[t]he substance abuse issues seem to coincide with her increasing depression recently,

although by her history they do not entirely coincide with those more recent problems" (AR 142).

In his discharge summary, the doctor noted that "[h]er moods seemed to lift fairly quickly once she

was in the hospital and started working on some things and also probably because of the cessation

of drinking" (AR 127). Plaintiff was discharged on July 12, 2001, to return home and go back to

work (AR 127). The doctor gave a diagnosis of major depressive disorder and alcohol dependence

(AR 127).

After reviewing the record, the court concludes that the ALJ's evaluation of

plaintiff's alcohol abuse is not inconsistent with the opinions expressed by her treating physicians,

Drs. Fudim and Ramirez.

Plaintiff also points out that she was assigned a GAF score of 50.[2] Plaintiff's Brief

at 11. While plaintiff attributes this to Dr. Fudim, it is unclear who assigned the score (AR 125).

A GAF score of 50 lies at the top of the 41 to 50 range, which indicates "serious symptoms (e.g.,

suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in

social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American

Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed.,

---

[2] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id*. at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

text rev., 2000), p. 34.  This GAF score coincides with plaintiff's condition when she was admitted to the hospital with suicidal ideations.

However, on plaintiff's discharge (July 12, 2001), Dr. Ramirez noted a current GAF of 60 with the highest GAF in the past 12 months of 65 (AR 127). The GAF score of 60 lies at the top of the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR*, p. 34.  Finally, plaintiff's GAF score of 65 lies within the 61 to 70 range, which indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

Plaintiff's GAF scores ranged from a score suggesting serious symptoms at the time she was hospitalized to a score suggesting mild symptoms.  The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score.  *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).  *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted); Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings").

Accordingly, the opinions expressed by Drs. Fudim and Ramirez are not inconsistent with the ALJ's determination that plaintiff was not disabled independent of her alcohol abuse.

### 3.    ALJ's hypothetical question

Plaintiff also contests the ALJ's hypothetical question posed to the vocational expert (VE) with respect to her mental impairments.  Specifically, plaintiff contends that "[n]ot only was the ALJ's own MRFC [mental RFC determination] erroneous, but also he failed to incorporate it into the hypothetical to the VE instead stating that [p]laintiff was capable of unskilled work with low concentration abilities and preclusion from having contact with the public."  Plaintiff's Brief at 14.  Plaintiff contends that the ALJ's hypothetical question should have including numerous other mental limitations:

> By failing to incorporate [p]laintiff's mental limitations, including agoraphobia, mild limitations in daily activities and social functioning, moderate limitations in concentration, persistence, and pace, difficulty sleeping, poor impulse control, questionable judgment, self-destructive behavior, easy distractability, and fear of touching others, not just the public but also co-workers and supervisors, into the hypotheticals, and by making his own vocational assessment, the ALJ employed a general, non-individualized evaluation which resulted in an erroneous outcome.

*Id.* at 15.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs.  *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments.  *Id.*  However, a hypothetical question need only include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of*

*Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ posed four hypothetical questions to the VE.  In the first hypothetical question, the ALJ made the following assumptions:

> Assume that a person is 53 years of age and has a 12 plus 2 education.  And worked in the positions that she stated.  Assume further I find from the medical evidence that the limitation is to a light work function, but the job should require no repetitive bending, crawling, kneeling or climbing.  And it should be a job with low degrees of concentration, and not in direct contact with the public.

(AR 308).  In response, the VE testified that the hypothetical person could perform 16,500 jobs in the region, consisting of: 6,500 hand packager jobs; 5,000 machine tender jobs; and 5,000 mechanical assembler jobs (AR 309).

The ALJ's hypothetical question addressed plaintiff's mental limitations by limiting her to "a job with low degrees of concentration, and not in direct contact with the public" (AR 308).  These limitations sufficiently accounted for plaintiff's mental impairments.  *See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, hypothetical question limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment).  It is not necessary that the ALJ's hypothetical question include each medical diagnosis that may apply to the claimant or each finding as set forth in a Psychiatric Review Technique Form.  *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions); *Miracle v. Commissioner of Social Security*, No. 01-6437, 2002 WL 1832642

16

at 82-3 (6th Cir. Aug. 8, 2002) ("[a]n ALJ is not required to mirror a medical report to a vocational expert in order to accurately state a claimant's relevant impairments"); *Furst v. Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 at *2 (6th Cir. March 13, 2000) (the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the plaintiff] had a severe impairment and whether [the plaintiff's] condition was equivalent to any of the impairments that are listed in Appendix A to the regulations). Accordingly, the court concludes that the ALJ's hypothetical question was adequate.

Plaintiff correctly points out a discrepancy between the VE's testimony and the ALJ's finding regarding available jobs. In his decision, the ALJ found that plaintiff could perform: 6,500 hand packager jobs; 500 machine tender jobs; and 5,000 maintenance worker jobs (AR 23C). The ALJ's decision understates the available machine tender jobs by 4,500, fails to state the 5,000 mechanical assembler jobs, and mis-states that plaintiff can perform 5,000 maintenance worker jobs. Nevertheless, the court concludes that the ALJ's apparent clerical mistakes constitute harmless error. The VE's testimony supports finding that plaintiff can perform 16,500 jobs. Even if the court excludes the 5,000 maintenance jobs, and ALJ's decision is read to include only 6,500 hand packager jobs and 500 machine tender jobs, these findings support the conclusion that plaintiff could perform a significant number of jobs in the national economy. *See* 20 C.F.R. § 404.1520; *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988) (1,350 to 1,800 jobs in the Dayton area found to be a significant number).

"No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand

17

would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, No. 03-2136, 2004 WL 2491074 at *2 (6th Cir. Nov. 4, 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).   Accordingly, the court finds no reason to disturb the ALJ's decision.

### C.    The ALJ did not make a proper RFC finding.

Next, plaintiff contends that the ALJ's physical RFC determination is flawed, because the ALJ did not follow SSR 96-8p "by failing to state which evidence he relied upon and by failing to evaluate how [p]laintif's combination of impairments affected her ability to perform work properly." Plaintiff's Brief at 16.

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Sec.*,  30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted).

Here, the ALJ evaluated plaintiff's physical RFC as follows:

Although the claimant had a lot of physical complaints at the hearing, her overall appearance and demeanor were inconsistent with those of a disabled individual.  I note that for the most part, she spoke well and did not appear to be in any significant pain.  In addition, her physical examinations with Drs. Mahawar and Siddiqui revealed little more than some generalized muscular tenderness, but with a normal gait, absence of musculoskeletal abnormalities, and intact neurological signs (Exhibits 3F & 9F).  Also, there is no evidence of any recent physician's visits, and the claimant's testimony that she sees Dr. Phillips only once or twice a year seems incompatible with reports of debilitating pain.

(AR 23).   The ALJ noted that plaintiff gets some pain relief from her medications (especially the

extra-strength Tylenol) (AR 23).  The ALJ found that plaintiff's recent travels to Pittsburgh (via bus

and car) and her part-time work as a massage therapist are inconsistent with her assertion that she

can sit or stand no more than 10 minutes at a time without changing positions (AR 23).

Plaintiff's record reflects that in July 2002, Dr. Mahawar found that her strength was

normal, that she had no muscle atrophy, and that she could perform a number of tests without

difficulty (e.g., squatting and rising, hopping on one leg, etc.) (AR 187-88).  In February 2003, Dr.

Siddiqui found that plaintiff had a normal gait, normal range of motion of all extremities joints, and

no muscle spasms or muscle wasting (AR 224).  In addition, plaintiff's treating physicians placed

no restrictions or limitations on her.

The ALJ's assessment is consistent with and supported by the DDS physician's

determination that plaintiff could perform light work (lift 20 pounds occasionally and 10 pounds

frequently) (AR 228).  An ALJ may rely on the opinions of the state agency physicians who reviewed

plaintiff's file. *See* 20 C.F.R. § 404.1527(f)(2)(i) (state agency medical consultants and other program

physicians are "highly qualified physicians and psychologists who are also experts in Social Security

disability evaluation.  Therefore, administrative law judges must consider findings of State agency

medical and psychological consultants or other program physicians or psychologists as opinon

evidence, except for the ultimate determination about whether you are disabled").

Plaintiff contends that the ALJ should have re-contacted her treating physicians to

ascertain whether she had any restrictions.  Plaintiff relies on SSR 96-5p, which provides in a

subsection entitled, "Requirements for Recontacting Treating Sources," as follows:

> Because treating source evidence (including opinion evidence) is important,
> if the evidence does not support a treating source's opinion on any issue reserved to
> the Commissioner and the adjudicator cannot ascertain the basis of the opinion from
> the case record, the adjudicator must make "every reasonable effort" to recontact the

source for clarification of the reasons for the opinion.

SSR 96-5p, www.ssa.gov.  The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.  *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).  However, the ALJ does not have a duty to re-contact every treating physician pursuant to SSR 96-5p to seek out additional evidence.  SSR 96-5p only requires an ALJ to make a reasonable effort to re-contact a physician for clarification of matters set forth the physician's opinion.  Here, plaintiff's physicians did not place limitations on plaintiff.  On the contrary, when Dr. Ramirez discharged plaintiff, she going back to her apartment, going to return to work and going to continue on her antidepressant medication (AR 127).  Plaintiff provides no basis for her claim that the ALJ needed to clarify any medical opinions expressed by her treating physicians. Accordingly, the ALJ did not err in failing to re-contact her physicians.

### D.    The ALJ failed to take into consideration plaintiff's obesity.

Next, plaintiff contends that the ALJ ignored her obesity.  Plaintiff's Brief at 19-20. Plaintiff bases this contention based solely upon her disability report, in which plaintiff states that she is 4' 2 ½" tall and weighs 130 pounds (AR 66).  Plaintiff contends that her height and weight result in a body mass index of 36.6 "which is at the obesity level."  Plaintiff's Brief at 19.  Plaintiff's claim is meritless and disingenuous.

At the hearing, plaintiff contradicted the information in her disability report, testifying that she was 5'2 ½" tall and weighed 126 pounds (AR 275).  Plaintiff further testified that she usually weighed only 117 pounds (AR 275).  Medical records indicate that plaintiff was over five feet tall, with no mention of obesity.  An admission form at the Southlake Center for Mental Health lists plaintiff as 5' 3" and weighing 125 pounds (AR 130).  Plaintiff's DDS examining

physician, Suresh Mahawar, M.D., reported that plaintiff was 5'3" tall and weighed 134 pounds (AR 187).   Another examining physician, M. Siddiqui, M.D., lists plaintiff as 60.75" (5' 3/4") tall and weighing 132.5 pounds (AR 224).   Neither Dr. Mahawar nor Dr. Siddqui characterized plaintiff as "obese." On the contrary, Dr. Siddiqui identified plaintiff's general appearance as "slim female" and Dr. Mahawar  characterized her as a "well-nourished, right-handed female in no distress" (AR 187, 224).

**E.      The ALJ's credibility finding is erroneous.**

Next, plaintiff contends that the ALJ's credibility determination is flawed.  An ALJ's credibility determinations are accorded deference and not lightly discarded.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

Here, plaintiff contends that the ALJ failed to follow the requirements of SSR 96-7p in determining that plaintiff was not totally credible.  Plaintiff's Brief at 20.  SSR 96-7p and 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain") list seven factors used to assess the credibility of an individual's statements.   The seven factors to be considered include: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

Although the ALJ did not structure his opinion with separate subsections addressing each factor, he addressed the relevant factors while discussing plaintiff's history of treatment (AR 19-21), her subjective complaints (AR 22-23) and her activities of daily living (AR 22-23). The ALJ noted that plaintiff "has not been particularly forthright in describing her alcoholism" (AR 21). In this regard, plaintiff testified at the hearing that she was a recovering alcoholic, and that the last time she had an alcoholic drink was "eight years ago" (approximately 1996) despite a record replete with references of sobriety and relapse since calendar year 2000 (AR 21). In this regard, the court notes that plaintiff misrepresented her alcohol abuse problem to the examining psychologist and examining physicians, i.e., she denied a history of substance abuse to Dr. Durak, told Dr. Siddiqui that she did not use alcohol, and reported to Dr. Mahawar that she drank only two glasses of wine per week (AR 186, 199). Substantial discrepancies exist between plaintiff's testimony, the medical evidence and other evidence in the record. Accordingly, the court has no basis to upset the ALJ's credibility findings.

**F.     The Step Five determination is not supported by substantial evidence.**

Finally, plaintiff contends that the ALJ erred at Step Five of the sequential evaliation by relying on the VE's testimony, because the VE's vocational testimony conflicted with the *Dictionary of Occupational Titles*. Plaintiff's Brief at 23. Plaintiff's claim is without merit. The Sixth Circuit has rejected the argument that the Commissioner is bound by the DOT's

characterization of occupations. "[T]he ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) ("the ALJ may accept testimony of a vocational expert that is different from information in the *Dictionary of Occupational Titles*").

## IV.   Recommendation

I  respectfully recommend that the Commissioner's decision be affirmed.

Dated:  January 8, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                     Hugh W. Brenneman, Jr.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).